IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

SHYJUAN CLAYTON ET AL                                        PLAINTIFF

VS.                                              No. 3:21-cv-00174-GHD-JMV

CITY OF OXFORD, MISSISSIPPI ET AL                            DEFENDANTS

DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT

Matthew Kinne pled guilty to murdering Dominque Clayton. But the question presented by this motion does not turn on Kinne's abhorrent conduct. The issue here is whether Defendants the City of Oxford and Police Chief Jeff McCutchen may be held civilly liable for Kinne's criminal act. Settled law answers that question in the negative.

To be sure, Plaintiff Shyjuan Clayton's legal theory is meritless. But there also is a troubling factual problem with her case: the complaint includes allegations that lack any evidentiary support whatsoever. Despite the public record showing that Kinne's ex-wife is alive and residing in Desoto County, the complaint contends that Kinne was forced to resign from a former law enforcement agency after she died under "suspicious circumstances" – the suggestion being that the City hired a known killer to its ranks. Because neither the facts nor the law support Clayton's

case, a final judgment under Rule 54(b) should be entered in favor of the City and Chief McCutchen.[1]

## BACKGROUND

Kinne, a former Oxford Police Officer, was engaged in an extramarital affair with Dominque Clayton. Doc. No. 1 at p.5. On May 19, 2019, he shot and killed her. *Id.* at p.8. He was arrested and pled guilty to capital murder. Kinne Judgment, Ex. A. On July 30, 2021, he was sentenced to life in prison without the possibility of parole. *Id.* This civil lawsuit followed, with the alleged representative[2] of Clayton's estate naming the City and Chief McCutchen as defendants in addition to Kinne. Doc. No. 1.

Pages four and five of the complaint set forth the liability theory advanced against the City. *Id.* They allege that Kinne's ex-wife died under "suspicious circumstances" while he was employed "at another law enforcement agency within the State of Mississippi"[3] and suggest that Kinne was responsible for her death, even though it was ruled a suicide. *Id.* The complaint says that the City reviewed Kinne's personnel file from this agency before hiring him, learned that he had been

---

[1]     Under Rule 54(b), a district court dealing with multiple claims or multiple parties may direct the entry of a final judgment as to fewer than all of the claims or parties if the court finds that there is no just reason for delay. Co-Defendant Kinne has not responded to the complaint and is in prison. If this Court grants the City's and McCutchen's dismissal request, it is requested that it be certified as final with respect to these defendants.

[2]     Clayton purports to bring this case on behalf of herself, Dominque Clayton's estate, Dominque Clayton's heirs, and Dominque Clayton's wrongful death beneficiaries. Doc. No. 1. It is not clear at this stage whether Shyjuan Clayton is the proper representative, but, for all the reasons explained in this brief, it does not matter. The City and Chief McCutchen could never be liable to anyone for Kinne's conduct.

[3]     The "law enforcement agency" reference is directed at Kinne's prior employment with the City of Olive Branch. This was confirmed by Clayton's counsel at the 7:10 to 7:17 mark of the video filed at Doc. No. 16-1.

forced to resign over the "suspicious" death, and accordingly should have known he "would likely violate the constitutional rights of another person" in the future. *Id.*

Page nine of the complaint sets forth the liability theory advanced against Chief McCutchen. *Id.* It says that he "was the commanding officer" and therefore "responsible" for Kinne's misconduct. *Id.* While it is not alleged that Chief McCutchen had any advance knowledge of Kinne's intent to murder Clayton, causes of action for supervisory liability and failure-to-intervene are lodged against him. *Id.* Notably, McCutchen did not even become the City's police chief until <u>after</u> the Clayton murder. *See* Jake Thompson, *City of Oxford names Jeff McCutchen next Chief of Police*, THE OXFORD EAGLE, Nov. 26, 2019, available at https://www.oxfordeagle.com/2019/11/26/city-of-oxford-names-jeff-mccutchen-next-chief-of-police/ (last visited September 13, 2021).

A press conference was held outside of the courthouse following the complaint's filing. *See* Doc. No. 16-1 (conventionally filed video). At the press conference, one of Clayton's attorneys, who is not barred in Mississippi and has not been admitted *pro hac vice*[4], repeated the theory that Clayton's murder "could have been avoided" because the City knew about Kinne's suspicious resignation from his prior law enforcement job yet hired him anyway. *Id.* at 5:40 mark to 6:30 mark.

Clayton's counsel then filed various subpoenas prior to the Rule 26(f) conference, without filing a notice of issuance, and on a named party represented by counsel. *See* Doc. Nos. 11-14. Undersigned counsel quickly objected, but Clayton's

---

[4] Currently before the Court is a motion to disqualify the attorney for making an unauthorized appearance in this case. *See* Doc. Nos. 16 & 17.

counsel refused to withdraw any of the subpoenas except the one served on a represented party. Judge Virden conducted a discovery conference, at which point Clayton's counsel stated that Olive Branch already had complied with its improper subpoena. Clayton's counsel was instructed to withdraw the other subpoenas and promptly provide undersigned counsel with the documents received from Olive Branch. *See* Doc. No. 24.

Included in the Olive Branch documents was the name of the "ex-wife" referenced in the complaint and at the press conference. *See* Kinne Application, Ex. B. Her name is Amy Michelle Kinne. *Id.* Armed with the name, undersigned counsel investigated the public record and exposed the allegations made in the complaint and at the press conference to be false. On August 21, 2020, Amy Michelle Kinne filed a petition in the Desoto County Chancery Court seeking to modify her custody arrangement with Kinne, since he was "awaiting a trial on the charge of Capit[a]l Murder." *See* Modification Petition, Ex. C. The petition of course means that she was alive when Kinne was hired by the City. *Id.*

### STANDARD OF REVIEW

The federal rules offer a number of ways to challenge a plaintiff's case, including a motion to dismiss under Rule 12(b)(6) and a summary-judgment motion under Rule 56. The defendants invoke both rules here.

Under Rule 12(b)(6), the central question is whether the complaint includes claims that are plausible. *Bell Atl. Co. v. Twombly*, 550 U.S. 554, 555–62 (2007). This question is answered by comparing the legal claims that have been identified

in the complaint with the factual allegations offered in support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be plausible, the Court must be able to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.* at 678. In resolving Rule 12(b)(6) motions, courts may consider the complaint, documents central to the claims referenced in the complaint, and matters of public record that are subject to judicial notice. *Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), *as revised* (April 12, 2017); *Joseph v. Bach & Wasserman, LLC*, 487 F. App'x 173, 178 n.2 (5th Cir. 2012). Merely reciting the elements of a cause of action, or making conclusory factual or legal assertions, is insufficient to defeat a motion to dismiss. *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018).

Under Rule 56, the central question is whether the record evidence provides a viable basis for relief as opposed to looking to the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). This question is answered by determining if there are genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial." *Foulston Siefkin LLP v. Wells Fargo Bank of Texas, N.A.*, 465 F.3d 211, 214 (5th Cir. 2006). A factual issue is "material only if its resolution could affect the outcome of the action," *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007), and "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the

nonmovant's burden in a motion for summary judgment," *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted).

## ARGUMENT & AUTHORITIES

In past cases, this Court has warned counsel to "conduct[ ] a reasonable inquiry into the facts" before filing suit. *See, e.g., Moore v. Western Surety Co.*, 140 F.R.D. 340, 344 (N.D. Miss. 1991). This obligation may not be avoided by stating that allegations are made "upon information and belief." *See Meyer v. Foti*, 720 F. Supp. 1234, 1244 n.24 (E.D. La. 1989) ("Plaintiff has liberally sprinkled the familiar state court phrase 'upon information and belief' throughout his pleadings, apparently under the notion that injection of this hackneyed shibboleth might in some manner shield him from Rule 11 sanctions. It will not.").

This case's complaint violates the pre-suit investigation rule by presenting the following narrative: (1) that Kinne was formerly employed with another law enforcement agency; (2) that, while employed there, his wife died under "suspicious circumstances"; (3) that the ex-wife's death was ruled a suicide but Kinne really was to blame; (4) that the law enforcement agency conducted an internal affairs investigation and forced Kinne resigned; (5) that the City knew about the forced resignation prior to hiring Kinne; and (6) that the City accordingly knew that "Kinne would likely violate the constitutional rights of another person" – namely, Clayton. *See* Doc. No.1 at pp.3-9. Each allegation was preceded by the qualifier, "Plaintiff is informed and believed," but the narrative is undisputedly false. *Compare id. with* Modification Petition, Ex. C.

If Clayton's counsel had conducted the required pre-suit investigation, it easily would have been learned that Kinne's ex-wife did not commit suicide and is in fact very much alive. *See* Modification Petition, Ex. C. Undersigned counsel verified this fact through a simple public records search. Attached as Exhibit C is an August 2020 chancery court filing, in which Kinne's ex-wife, Amy Michelle Kinne,[5] sought to modify their child custody arrangement while Kinne was "awaiting a trial on the charge of Capit[a]l Murder." Other courts have explained that "allegations based upon information and belief are particularly inappropriate in cases where the allegations are based on matters of public record." *E.g., Funk v. Stryker Corp.*, 673 F. Supp. 2d 522, 525 (S.D. Tex. 2009).

The City and Chief McCutchen would be entitled to dismissal under the heightened legal standards applicable to this case even if Clayton's allegations were true. But the fact that they are not true highlights a transparent attempt to bring defendants other than Kinne into this case. What follows are the many reasons why all Clayton's claims fail.

## Federal Law

The complaint does not allege that the City or Chief McCutchen had any direct conduct with Dominque Clayton. It instead contends that they are legally responsible for the misconduct of Kinne. This is a false premise, since Section 1983

---

[5] Undersigned counsel has no reason to believe that Kinne had more than one ex-wife when he was hired by the City, and the improperly subpoenaed documents from Olive Branch confirm that he was married to Amy Michelle Kinne while employed there. *See* Kinne Application, Ex B.

does not impose liability because of the actions of others. Defendants may be held liable only by virtue of their "own individual actions[.]" *See Iqbal*, 556 U.S. at 676.

Indeed, the legal standards in this context are well settled. The foundational rule is that "vicarious liability is inapplicable in an action under 42 U.S.C. § 1983," meaning that "something more" than Kinne's misconduct is required. *See Green v. Richardson*, 2021 WL 3713061, *5 (S.D. Tex. 2021). With respect to the City, Clayton is required to prove that a governmental policy or custom was the moving force behind the murder. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). With respect to Chief McCutchen, Clayton is required to prove that he was "personally involved" in the murder, *see Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999), and that he is not entitled to qualified immunity. *See Vann v. Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (explaining that plaintiffs shoulder the burden over overcoming qualified immunity).

**Claims against the City.** The complaint alleges that the City is liable for Kinne's "excessive force" under a <u>negligent</u> training,[6] supervision, and retention theory. But such a theory is a non-starter, since a "§ 1983 claim . . . cannot be based upon mere negligence." *See LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 n.8 (5th Cir. 2015). To reiterate: an unconstitutional policy or custom is required. *See Peterson*, 588 F.3d at 847.

Clayton does not identify an express policy that she believes is unconstitutional, nor has she identified a widespread pattern of similar instances

---

[6]     The negligent training, supervision, and retention theory is set forth in the "second cause of action" on page 10 of the complaint, but a "failure to train" theory is repeated on page 12. *See* Doc. No. 1.

8

that could give rise to an unoffical municipal custom. *Id.* at 850-51 (explaining that, under the "demanding" unoffical custom theory, a plaintiff must identify "sufficiently numerous prior incidents" and those prior incidents must be both similar and specific to the alleged violation in question). The theory, again, is related to Kinne's supervision and training.

The Fifth Circuit has explained that attacks on training and supervision may be analyzed together, since both require deliberate indifference on the part of a final policymaker. *See, e.g., Brown v. Callahan*, 623 F.3d 249, 253-54 (5th Cir. 2010). And, in addition to deliberate indifference on the part of a final policymaker, a plaintiff must demonstrate a causal link between the deliberate indifference and the specific injury in question. *Id.* at 254. Clayton cannot satisfy any of these requirements, much less all of them.

Start with the "final policymaker," which the complaint does not even identify. In past cases, this Court has explained that the Board of Aldermen – not the police chief – is the final policymaker under Mississippi law. *See Sockwell v. Calhoun City*, 2019 WL 3558173, *2-3 (N.D. Miss. 2019) (Davidson, J.). Given that there are no allegations stating what the City's board supposedly did wrong, there can be no municipal liability. *See, e.g., Higginbotham v. City of Louisville*, 2019 WL 4934949, *2 (N.D. Miss. 2019) (quoting Fifth Circuit precedent for the rule that "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts").

Then there is deliberate indifference, which is "an extremely high standard" that requires a "stringent" level of culpability. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In all but extraordinary cases, there must be evidence of "a pattern of similar incidents" that would provide notice that supervision or training is constitutionally deficient. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).

The City is automatically insulated from liability, since Kinne was a certified law enforcement officer. *See* Kinne Certification, Ex. D. It has long been "held that[,] if the training of police officers meets state standards, there can be no cause of action for a failure to train absent a showing that 'this legal minimum of training was inadequate to enable [the officers] to deal with the 'usual and recurring situations' faced by jailers and peace officers.'" *See O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009). But even if Kinne had not been certified, Clayton has not shown any similar incidents that could satisfy the deliberate indifference standard. *See Sanders-Burns*, 594 F.3d at 382.

To the extent Clayton attempts to avoid the pattern-of-similar-incidents requirement by hinting at the extremely narrow "single incident" theory, *see* Doc. No. 1 at p.12, Clayton misapprehends that theory. Of course a prior pattern of similar incidents is "ordinarily necessary" to succeed on a failure-to-train theory. *See Bd. of Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997). The single-incident exception is derived from a footnoted hypothetical in *City of Canton v.*

*Harris*, 489 U.S. 378, 380 (1989), but the Supreme Court drastically weakened the exception when it decided *Connick*. *See* 563 U.S. at 71-72. Highlighting the "narrow[ness]" of the exception, the Court did not even refer to it as a certain exception to the proof-by-pattern method – it called it "a possible exception[.]" *Id.* at 72.

The possible exception does not apply in this case for several reasons.

For starters, the single-incident theory "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). But it is undeniable that Kinne was certified by Mississippi's Law Enforcement Training Academy. *See* Kinne Certification, Ex. D. Courts have long held that Mississippi's police academy includes sufficient training to defeat a failure-to-train theory. *See, e.g., Estate of Pernell v. City of Columbus*, 2010 WL 1737638, *6 (N.D. Miss. 2010) (rejecting denial-of-medical-care claim based on failure to train, where "both Officers attended and graduated from the Mississippi law enforcement academy and [were] certified law enforcement officers").

What's more is that, even if Kinne had received no training at all, Clayton still "must prove that the highly predictable consequence of a failure to train would result in the <u>specific injury</u>" at issue, i.e. Clayton's murder. *Hutcheson v. Dallas Cty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (emphasis added; quoted case omitted). In *Canton*, the example provided was a municipality who provides its police officers with firearms but then gives no training on the use of deadly force. *See* 489 U.S. at

390 n.10. But that example does not translate here. Clayton died from a criminal act by someone she was having an affair with.

And even if Clayton could posture Clayton's "specific injury" as "obvious," that presents a different obstacle. In *Anderson v. Marshall County, Mississippi*, 637 F. App'x 127 (5th Cir. 2016), the Fifth Circuit reminded that failure-to-train liability turns on whether the governmental entity should be held responsible, not whether its employees did something wrong. It was explained that the governmental entity "could not have anticipated that [its] correctional officers would ignore . . . obvious aliments." *Id.* at 135. Obvious medical problems are things that officers should know to seek help for "even without additional training." *Id.* Like the governmental entity in *Anderson*, the City here would have "had no reason to predict that [its officers] required specialized training to reach this basic threshold." *Id.*

Finally there is the problem of causation, which the Supreme Court has called "rigorous" in this context. *See Brown*, 520 U.S. at 415. There are no allegations or proof that a lack of training or supervision is what led to Kinne's murder of Clayton. *See, e.g., Justiniano v. Walker*, 986 F.3d 11, 23 (1st Cir. 2021) (explaining that speculative inferences are not enough). Quite different, the complaint admits they were involved in an extramarital affair. "Proving that an injury or accident could have been avoided if an employee had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct[,] will not suffice." *Connick*, 563 U.S. at 68 (emphasis added).

12

Ultimately, there is no basis to hold the City liable for Kinne's criminal act. The factual theory advanced – that the City knew Kinne was dangerous before hiring him – is demonstrably false. But even if it were true, much more is required under *Monell*.

**Claims against Chief McCutchen**. The complaint alleges that Chief McCutchen is personally liable for Kinne's "excessive force" based on failure-to-supervise and failure-to-intervene theories. Each is meritless because Chief McCutchen did not violate the Constitution and, even if that point were arguable, he would be entitled to qualified immunity.

*Failure-to-Supervise Theory*. The complaint alleges that Chief McCutchen is liable because he had supervisory authority over Kinne yet failed to ensure that Kinne did not murder Clayton. But this contention is frivolous. Section 1983 requires personal involvement, and there certainly is no allegation that Chief McCutchen was involved in Kinne's criminal plan to kill his girlfriend. *See, e.g., Powell v. Martinez*, 579 F. App'x 250, 252 (5th Cir. 2014) (affirming grant of motion to dismiss on failure-to-supervise claim for lack of personal involvement).

To be sure, an individual defendant's "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoted case omitted). Nothing in the complaint even remotely suggests that Chief McCutchen had anything to do with Kinne's criminal activity.

13

*Failure-to-Intervene.* The complaint also alleges that Chief McCutchen is liable for failing to intervene in Kinne's criminal conduct, but that theory is even worse. To succeed on such a claim, Clayton must establish that Chief McCutchen (1) "witnessed use of force" on Clayton, (2) "had a reasonable opportunity to realize [it] was excessive[,]" and (3) "failed to intervene despite having a reasonable opportunity to do so." *See Est. of Manus v. City of Eupora, Miss.*, No. 1:11-CV-00149-SA-DAS, 2015 WL 1505836, *10 (N.D. Miss. 2015) (citing *Deshotels v. Marshall*, 454 F. App'x 262, 268 (5th Cir. 2011)). Since Chief McCutchen plainly was not present and had no idea Kinne would kill Clayton, and in any case Clayton has not pled otherwise, there can be no intervention liability. Kinne himself originally denied culpability and only later admitted to the murder. *See* Kinne Judgment, Ex. A.

*Qualified Immunity.* Even if Clayton could demonstrate that Chief McCutchen violated the Constitution, he still is entitled to dismissal on qualified immunity grounds. Indeed, when qualified immunity is asserted, "it is not enough for a [p]laintiff[] to adequately demonstrate constitutional violations." *Franco v. Kluge*, No. EP-13-CV-313-FM, 2015 WL 1637688, *4 (W.D. Tex. Apr. 13, 2015).

Individuals are entitled to qualified immunity unless the unlawfulness of their conduct was "clearly established[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018). "Clearly established" means that, at the time of the officer's conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful. *Id.* (citation omitted). In other

words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *Id.* This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation omitted).

Framework. Plaintiffs shoulder the burden of defeating qualified immunity. *See Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). To do so, they have two options: (1) proffer a precedential case that "squarely governs" the conduct at issue, i.e. "the analogous-case requirement" or (2) demonstrate the conduct at issue is an "obvious" case of unconstitutional behavior, i.e. the "obvious" exception. *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021).

This case does not implicate the very rare "obviousness" exception, for "[t]he standard for obviousness is sky high[.]" *See Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). In Fourth Amendment cases like this one, the Supreme Court has warned that proffering an analogous case is "especially important[.]" *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Unless every single reasonable officer would know "in the blink of an eye" that his or her conduct is unconstitutional because of the authoritative precedent, then qualified immunity must be granted. *See Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting Supreme Court precedent). This requires a high "degree of specificity." *Wesby*, 138 S. Ct. at 590 (citation omitted). The Supreme Court has "repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (citation

omitted). This principle reflects a "manifestation of the law's general concern about retroactive punishment or liability." *Wesby v. District of Columbia*, 816 F.3d 96, 110 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (citing Supreme Court precedent).

Application of the Qualified Immunity Framework. Applying these standards here, Clayton has pled no facts that would even suggest that Chief McCutchen's actions were objectively unreasonable under clearly established law as of May 2019. There is no factually analogous case from either the Supreme Court or the Fifth Circuit that was decided before then, nor was there a "robust consensus of persuasive authority" that "clearly and unambiguously" prohibited Chief McCutchen's conduct. *See Morgan*, 659 F.3d at 371-72.

In sum, the Fifth Circuit has reiterated "[t]he qualified-immunity doctrine makes" obtaining "money damages from the personal pocket of a law enforcement officer" "difficult in every case." *See Morrow*, 917 F.3d at 874. The Fifth Circuit further explained that qualified immunity presented a "heavy burden" for plaintiffs and that the denial of qualified immunity is an "extraordinary remedy." *Id.* at 874-76. Since Chief McCutchen did not act objectively unreasonable under clearly establish law, he is entitled to qualified immunity.

## State Law

In her sixth and seventh causes of action, Clayton purports to bring claims of "reckless disregard" and "wrongful death" without saying who the claims are aimed at. *See* Doc. No. 1 at p.14. Such a pleading strategy is defective, since "it is axiomatic that defendants [are] entitled to know exactly what claims are being

brought against them." *See also Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1250 (11th Cir. 2003) (emphasis added).

Nonetheless, it is obvious that there is no state-law theory under which the City or Chief McCutchen could be held liable. "The Mississippi Tort Claims Act (MTCA) provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." *C.W. and J.A. v. McComb Separate Mun. Sch. Dist.*, 754 So. 2d 1136, 1138 (Miss. 1999). Here, Clayton's claims fail for both procedural and substantive reasons.

**Procedural Problem**. Any claim under state law is time barred, since Clayton did not file this lawsuit until two years and 79 days after the murder, well beyond the MTCA's one-year statute of limitations period. *See* Miss. Code § 11-46-11(3). Although a notice of claim was served on June 10, 2019, *see* Notice of Claim, Ex. E, the MTCA's tolling principles moved the limitations period, at most, to November 20, 2020. *See* Miss. Code § 11-46-11(3) (outlining the MTCA's 95-day tolling provision and 90-day filing provision). Clayton's lawsuit was filed at least 258 days too late.

**Substantive Problems**. To start, Clayton does not appreciate that "reckless disregard" is not a claim under Mississippi law. It is, quite differently, "a standard that applies when determining whether a municipality has retained its immunity." *See Hawkins v. Lexington*, No. 3:19-cv-606-DPJ-FKB, Doc. No. 71 at p.12 (S.D. Miss. July 9, 2021). Prior to this lawsuit being filed, Clayton's counsel was provided

notice of this point by Chief Judge Jordan in a Southern District of Mississippi case. *Id.*

Clayton's counsel also was put on notice that suit may not be brought both against a governmental entity and a governmental employee in his or her personal capacity. Under the MTCA, a plaintiff must "pick a horse" or, as Chief Judge Jordan put it, plaintiffs cannot "have the best of both worlds[.]" *Id.* at pp.12-13 ("So either the officers acted within the course and scope of their employment—in which case there are no individual-capacity claims—or they acted outside the course and scope of their employment, in which case the City of Lexington maintains sovereign immunity.").

Clayton improperly attempts to sue Kinne, Chief McCutchen, and the City, but both Chief McCutchen and the City are immune under state law. For his part, Chief McCutchen is not alleged to have done anything outside the course and scope of his employment, meaning that he is immune from personal liability. *See Cotton v. Paschall*, 782 So. 2d 1215, 1217 (Miss. 2001) (explaining that, under Miss. Code § 11-46-7, individuals can never be personally liable "for acts or omissions within the course and scope of their employment"). The complaint in fact seeks to hold Chief McCutchen responsible for Kinne's actions precisely <u>because of</u> his chief duties. *See, e.g.,* Doc. No. 1 at p.12 (alleging that Chief McCutchen "violated his supervisory duties by failing to ensure that Officer Kinne was properly supervised and controlled").[7] For the City's part, Miss. Code § 11-46-5(2) expressly provides

---

[7]     The complaint alleges that Kinne "was acting in the course and scope of his duty as an employee of the City of Oxford[,]" Doc. No. 1 at pp.12-13, but does not expressly say

that governmental entities retain their sovereign immunity when an employee commits "any criminal offense other than traffic violations." Given that Kinne pled guilty to capital murder, *see* Kinne Judgment, Ex. A, the City assuredly is not responsible for his actions under state law.

## CONCLUSION

For these reasons, the City and Chief McCutchen request that they be dismissed from this case and that a final judgment under Rule 54(b) be entered.

Dated: September 13, 2021.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   */s/G. Todd Butler*
      G. Todd Butler, MB #102907
      Mallory K. Bland, MB # 105665
      4270 I-55 North
      Jackson, Mississippi  39211-6391
      P. O. Box 16114
      Jackson, Mississippi 39236-6114
      Telephone: (601) 352-2300
      Telecopier: (601) 360-9777

**ATTORNEYS FOR THE CITY OF OXFORD AND CHIEF MCCUTCHEN**

---

the same thing about Chief McCutchen. This constitutes an attempt to artfully plead around the MTCA, although such a strategy is impermissible. Mississippi courts have long explained that "[s]ubstance controls, not labels." *See Tolbert Southgate Timber Co.*, 943 So. 2d 90, 1010 (Miss Ct. App. 2006) (Southwick, J.) (explaining that it did not matter whether the theory was trespass or conversion). In the MTCA context in particular, a plaintiff "cannot avoid the MTCA simply by renaming that claim." *See Kelly, LLC v. Corinth Public Utilities Comm'n*,  200 So. 3d 1107, 1118 (Miss. Ct. App. 2016). Kinne's criminal act unquestionably took him outside the course and scope of his employment.

## CERTIFICATE OF SERVICE

I certify that this document has been filed with the Clerk of Court, using the Court's ECF system, which provides service to all counsel listed on the docket in this case as of the date below.

Dated: September 13, 2021.

*/s/ G. Todd Butler*
G. Todd Butler

PD.35388896.1